## MICHAEL GROGAN v. THE STATE.

1. INDICTMENT. *Assault with intent to steal. Description of property.*
   An indictment which charges an assault with intent to steal the goods of the person so assaulted is not defective because it fails to describe such goods, if there was no actual taking.

2. SAME. *Name of party assaulted. Evidence.*
   Such indictment cannot be quashed because it fails to set out the name of the party assaulted, if it avers that the name of such party was unknown to the grand jury. But whether it be necessary to show on the trial that the name was unknown to the grand jury, *quære.*

3. EVIDENCE. *Conspiracy to rob. Acts of confederates.*
   ·A. and G. having united in the common intention of robbing I., knocked him from a moving train. The train was stopped, and while I. was being carried off A. in a short time reappeared alone and again attempted to rob I. *Held,* that the acts and words of A., whether G. was present or not, in this second attempt might be proven on the trial of G., such attempt being in furtherance of the common purpose, from which the defendant had not withdrawn.

4. SUPREME COURT PRACTICE. *Refusal of circuit court to delay trial. Indisposition of counsel.*
   The supreme court will not reverse a case simply because the court below refused to delay a trial on the affidavit of counsel that he was the sole counsel for the defendant and that his physical condition was such that he could not do justice to his client, if such counsel proceeded with the case, examined witnesses, and made an able argument, and the record fails to disclose any point of objection or defense which was not availed of on the trial, and the evidence shows that the verdict of the jury was manifestly right.

APPEAL from the Circuit Court of Grenada County.
HON. A. T. ROANE, Judge.

Some time in June, 1885, an old Italian, who could not· speak a word of English, was on a train of the Illinois Central Railroad, on his way to Vicksburg. Just as the train was leaving Grenada a man named Ackerman approached him and demanded his ticket.

The old Italian hesitated, when Ackerman seized him by one arm and Michael Grogan seized the other, and pushed the Italian out on the platform of the car, and there Ackerman struck him a lick on the head with some sort of weapon and knocked him from

the train. The train was stopped and two employees took the Italian up and carried him back to Grenada.

Michael Grogan was indicted, and the first count of the indictment was as follows: " That J. H. Ackerman and Michael Grogan, in said Grenada County, on the 15th day of June, 1885, on and upon a certain man whose name to the grand jurors is unknown, feloniously did make an assault with a certain deadly weapon, to wit: a weapon likely to produce death, but the exact name and kind is to the grand jurors unknown, with intent there to rob a certain person whose name is unknown, and feloniously and violently to steal, take, and carry away the money, goods, and chattels of the said unknown person, from the person and against the will of said unknown person." The defendant demurred to this indictment because it failed to describe the goods attempted to be stolen, and because it failed to set out that the grand jury made an effort to find out the name of the party assaulted. The court overruled the demurrer.

On the trial evidence was introduced showing that while the Italian was being carried back to Grenada by the railroad employees, Ackerman, under pretense that the Italian was a pauper being taken to New Orleans under his charge, and that he was searching for his ticket, deliberately went through the pockets of the Italian looking for money, and that this was a very short time after Ackerman and Grogan had knocked him from the train.

Before the trial began A. H. Whitfield, counsel for the defendant, filed an affidavit that " A. H. Whitfield, on oath, says that he is physically unable to try the case of *The State* v. *Grogan*, in the manner and with the attention and ability which should be given the same; that he was engaged yesterday in the trial of *The State* v. *Ackerman*, which lasted till about ten o'clock at night, and that he does not nor does his client apply for a continuance of the cause, but merely that it be set for some day during the court to suit the court and the convenience of the parties."

On motion for a new trial it was shown, by several witnesses, that counsel for the defendant made an able argument of more than one hour and a-half in length, and conducted the case with skill,

though he did not speak in as loud a tone nor as vigorously as usual.

The defendant was convicted and sentenced to ten years in the penitentiary. Thereupon he took this appeal.

*A. H. Whitfield,* for the appellant.

1. The demurrer to the indictment should have been sustained, and the indictment quashed, for the following reasons:

Property should be described as in larceny. *Cunningham* v. *State,* 49 Miss. 702; *Merrill* v. *State,* 45 Miss. 651; Bish. Cr. Pro. 552 and 575; 2 Bish. Cr. L. 1158.

The indictment must charge the attempt to do the substantive offense, just as you would charge the substantive offense itself. 49 Miss. 702; Form of In. 2 Bish. Cr. Pro., § 1001 *et seq.;* Wharton's Crim. Law, vol. 2; 2 Morris State Cases 1780 and 1811.

2. Necessity is no excuse for the absence of an essential averment. 1 Bish. Cr. Pro. 498 and 547. If the grand jury might have known the name and do not inquire, it operates an acquittal. 1 Bish. Cr. Pro. 549. And it must be proven that the name was unknown to the grand jury when there is proof on the trial of the name. Bish. Cr. Pro. 552.

3. On the point that the court should have passed the case till some later day, I earnestly insist, because I believe that the defendant was prejudiced in his defense by my being forced to go into his case in my exhausted physical condition. The court will remember that I had been engaged in the trial of Ackerman's case until about ten o'clock at night of the night before, and that there was a special term of the court, not a day of which had been used. I have not at hand a library from which to cull authorities to show that when the defendant's sole counsel is sick, and plenty of time remains in which to try the cause, the court should grant a reasonable delay, even if a railroad corporation is standing there clamoring for the sacrifice; but I believe the memory and learning of this court can furnish itself with many instances; and I feel sure that, if it had the precedent to sit without an authority upon earth, it would not hesitate to condemn the action of the court below in this matter. Of course, I recognize the very elegant things it has

pleased the court, the district attorney *et al.*, to say of my argument; but I do not exactly relish the idea of seeing my client (who is manifestly a good man led into bad company) complimented into the penitentiary over my head.

*T. M. Miller*, Attorney General, for the State.

1. The demurrer to the indictment was properly overruled.

In charging an assault with intent to commit robbery, it is not possible in a case like the one at bar to describe the property intended to be taken.

Facts which are not within the knowledge of the grand jury, after hearing such evidence as the law deems sufficient, need not be set out in the indictment. 1 Bish. Cr. Pro., § 297.

If in fact the circumstances are such as to preclude the grand jury from stating the matter with greater precision, " name, etc., to the grand jurors unknown," is a sufficient statement. Ib. 303.

The indictment under consideration is according to the most common and approved form. 1 Wharton Am. Cr. Law 290; Wharton's Precedents, 2d ed., 254.

2. It is not necessary *in an indictment describing a person* or name as unknown, to *aver* diligent inquiry on the part of the grand jury, to ascertain the same. 1 Bish. Cr. Pro., §§ 300 and 301.

What may occur on the trial cannot aid a demurrer to an indictment. Nor is it necessary to prove the averment that a person, thing, or name was unknown to the grand jury. Ib. 301–303.

3. It would be transcendental to inquire whether or to what extent a man may be injured by the failure of his counsel to make his arguments in as loud a tone as he might have seen fit to employ under different circumstances.

I think the judge felt bound by his sense of duty to be a little unkind to the counsel, but it cannot be said that any injury did or could have resulted to the accused.

COOPER, C. J., delivered the opinion of the court.

The indictment is not defective in that it fails to state what goods the defendant intended and attempted to steal from the person assaulted. When there has been no actual taking, it is impos-

sible to say what was intended to be taken. *Conolly* v. *The People,* 3 S. C. 474; *Cunningham* v. *The State,* 49 Miss. 685.

The averment that the name of the party assaulted was unknown to the grand jury excused the necessity of giving the name, so far at least as to sustain the indictment on a motion to quash.

The authorities are in conflict upon the question whether upon the trial it is necessary to show that in fact the name of the party was unknown to the grand jury, and could not be learned upon reasonable inquiry. Bish. Cr. Pro., §§ 297, 303.

Conceding that such proof is required, we think the evidence sufficiently establishes these facts in this case. The person assaulted was a stranger traveling upon a railroad train; he was an Italian, and spoke no English; no one knew his name except his companions, none of whom understood our language. On the trial his name was disclosed by the interpreter, through whom his testimony was delivered. Under the circumstances, we think it sufficiently appears that the grand jury did not know and could not discover his name by the exercise of any care which they were required to take. The act of Akerman in putting his hand into the pocket of the Italian soon after he had assaulted him, and while he was being removed to the hotel, and his declaration that he was a pauper who was being carried by him to New Orleans was properly admitted to be given in evidence against the defendant. The evidence of a conspiracy between the defendant and Akerman was abundant, and what Akerman then did and said was in the furtherance and consummation of the common purpose—from which it does not appear that the defendant had withdrawn. There was an intimate connection of time and place between the assault made by the defendant and Akerman and that made by Akerman alone. It is impossible to say that there was, in fact, a separate attempt made by Akerman alone after the termination of the joint attempt, rather than a continuance by Akerman of the joint attack. The old man assaulted had been taken from the car of a running train by the two; Akerman had knocked him from the platform of the train, and had then turned to overcome the employee of the railroad, who had rung the bell to stop the train; the train had been

at once stopped, and the injured party taken by two employees to be carried to the adjoining hotel, when Akerman again appeared, and with bold persistence attempted to complete the robbery in the perpetration of which he and the defendant had but a few moments before been interrupted. As long as Akerman was engaged in the prosecution of the unlawful common purpose, he was the agent of the defendant, and what he did and said in so doing were the acts and words of his confederate, whether he was actually present or not.

We cannot say that the court below erred in directing the trial to proceed against the objection of the counsel for the defendant. It may be that by so doing the court occasioned suffering to the counsel, but we do not see that the defendant was prejudiced thereby. A careful examination of the record fails to disclose any point of objection or defense which was not availed of on the trial. The verdict of the jury was manifestly right, on the evidence, and no different result could rightfully follow if the case should be reversed. Counsel, though suffering from fatigue and indisposition, presented all the defenses which it seems to us could have been presented, and the evidence heard on the motion for a new trial discloses the fact that he made an able and eloquent argument before the jury of over an hour and a half in length. The physical pain endured by counsel in the defense cannot be considered as conferring any right upon the defendant to a new trial, unless it was of such character as to materially affect him in the discharge of his duty. That such was not the case on this trial is, we think, manifestly shown by the evidence.

*The judgment is affirmed.*